Good morning, Your Honor. Peter Johnson on behalf of Appellant Rolando Ontiveros. I will be arguing my opening for 15 minutes and reserving 5 minutes for rebuttal. With the Court's permission, I would like to focus on three of the issues, several issues that were raised before the Court. Issue 1, whether the Court in failing to conduct a question-by-question inquiry was error. Issue 2, whether the Court in failing to compel use of immunity was error. And issue number 5, whether the Court abused its discretion in allowing a witness to testify, a layperson, to testify as an expert. Your Honors, the Court abused its, excuse me, the witness called by the defense to plead the Fifth Amendment by not inquiring further as to why he was pleading the Fifth Amendment. The question-by-question inquiry was vital in this circumstance. Roberts Well, the judge did conduct, outside the presence of the jury, an inquiry. He allowed defense counsel to ask a series of questions. He did, Your Honor. Right outside the presence of the jury? Yes, Your Honor. And he allowed Mr. Tursak to confer with his attorney, who was there to assist him. He did, Your Honor. Wasn't it pretty clear from those series of questions, which were pretty incriminating, that he wasn't going to answer any of them? He said, I take the Fifth, or whatever he said. I agree with that, Your Honor. I think the error occurred before. And didn't this judge have a substantial amount of experience with these Mexican Mafia cases? He tried them all, didn't he? He did, Your Honor. And if I can answer the first question and go straight to that issue. Number one, I think the error occurred before he got to that. When the judge told this witness, you cannot answer some questions and not others. I think that's where the error occurred. And it effectively chilled the testimony of this witness. Isn't that, well, okay, two things. Isn't that a true statement? And second, didn't defense counsel agree that that was a correct reading of the law? I think what that, and that's a tough issue for the defense in this, and that we'll get into the plain error certainly if the court has questions. But I think that when the court has a role, and the role is to decide whether the question by question is actually answered. In the beginning, when the court chilled the testimony, in our view, chilled the testimony of this witness, and the defense counsel basically acquiesced, I think that's certainly a problem for the defense in this. But it doesn't destroy the case. I think that the judge had a role in supervising whether, in fact, the question by question was appropriate. And whether your position that what the judge should have said is, yes, Mr. Witness, you have the right to answer some questions and not answer other questions. That's the law required the judge to say that. And in not saying that, he chilled the witness's testimony improperly. No, Your Honor. My position is slightly less than that. It's not that the law says you can or cannot do it. But it's that when a witness then that's called for the defense under the entire circumstances of this case, where most of the evidence is uncorroborated witness testimony offered by what we call a paid informant. And then the defense then offers a witness. And that witness actually expresses a desire to speak and says, I can answer some questions but not others. I think there's an obligation for the court to inquire further as to which questions can be answered and which questions cannot. So as I understand what you're saying is that they should have, maybe outside the jury, but put him on and have the defense counsel start asking him questions and see as to each question whether he would invoke the fifth or not. Do that first before talking about the issue of selective answering of questions. I'm not sure if I fully understand the court's question. Okay, so you put Terzak on the witness stand and the defense counsel asked him, let's see, were you rivals with the Fernandez-Martinez-Turvisco gang within the Mexican mafia? So he asked that. Is that something that he would necessarily need to take the fifth for since he's already been convicted of that? His participation in him? I think that goes to the court's second inquiry is regarding to the familiarity with the case. This court in a prior trial had stated that this witness did not have a Fifth Amendment right to remain silent because of those reasons. He had already been convicted. He had already been convicted. And that the familiarity with the case, I think, works against the government in that this court is very familiar with the case and very familiar with the circumstances of this particular witness. The defense counsel probably not as so because the defense counsel. So just to follow up what Judge Ward was suggesting, so is it your position that what should have happened here is that once it was obvious that this guy might want to invoke the Fifth, Terzak might want to invoke the Fifth, that what should have happened, is it your position that what should have happened is either, could have done it outside the presence of the jury or in front of the jury, is that defense counsel should have been allowed to go question by question by question with the judge ruling, with the defendant asserting the Fifth and the judge saying, yes, you can assert the Fifth? Is that what you think? I think that the inquiry should have been further in the question simply that, the question simply asked, what questions is it, what is it that you want to provide and what is it that you don't want to provide? Make a distinction between what's available, what you're here to testify about, and what you're taking the Fifth about. And I think that that is the. But you can't really do that unless you go question by question. Right. And I think that, and I somewhat agree with that. But I believe that the chill in that decision started out the process of precluding this witness from testifying. And the chill was that you cannot answer some questions and decide that other questions you're not going to answer. What if the lawyer would say to the judge, Your Honor, I'm just going to tell, I'm just advising my client to invoke the Fifth with every question that's asked. That's what happened, isn't it? He did do that. He did consult with his lawyer and then he came back and said, I'm not going to answer any questions. I think the consult happened after the, you can answer the question, you can answer some questions as opposed to the others. And then the decision was made that I will not answer anything. But isn't that exact, I mean, we're all trial judges. I happen to still be one, thank heaven. And that's what you have to do in the courtroom. First question, don't you go to church every Sunday? Yes. Have you ever done anything wrong? Ever. Isn't it true you beat your girlfriend to death with a golf club last night? Take the Fifth. You can't supervise a trial and allow someone to pick and choose their answers to questions. And if you're being honest to the witness, you've got to tell them that. Isn't that exactly what the judge did? No, I don't think it's, I agree with the first part, but I don't think it's exactly what the judge did in that case. I think the judge stopped by making the statement or the ruling that certain questions cannot be answered than others. I think that because the judge had a familiarity with this case, it had an obligation to inquire further as to which questions the witness was willing to answer and what questions the witness was not willing to answer. Let's assume we agree with you. You argue that Terzak's testimony, if he had been able to provide it, would have contradicted the cooperating witnesses Tervisco and Rochin. What would it have been? How could it have contradicted their testimony? The government, in opening, during the trial, and in closing, argued that Appellant Ontiveros, defendant, was at the root of the warring factions. Specifically, the government argued that a drug deal gone bad was at the root of the warring factions, and that involved Appellant Ontiveros. Mr. Terzak would have testified that the root of the warring factions was, in fact, the FBI or the agents perpetuating a war between the two. Whether that's true or not true, it's directly in contradiction with the foundation of the government's case. And that, I know the government continues to offer argument that the outrageous government conduct argument was precluded in evidence. But when the government chooses to put this Appellant Ontiveros at the core of, or this alleged drug deal at the core of its case, then the defense is entitled to rebut that evidence. And that's what Mr. Terzak would have done. But this is, you say it's foundation. Isn't it really more background? Mr. Ontiveros could be found guilty. The evidence was sufficient for him to be found guilty, whether or not he provoked this intergang war. This was background. Yes, the government put some of that on. But they weren't relying on that role of his in provoking this general warfare in putting on evidence that he was guilty of the crimes he was charged with, were they? It was background, not foundation. I think the background in this case created the foundation for the jury to conclude guilt. And I think the arguments that of the sufficiency of evidence when examining those is evidence of that. The government did not have evidence that Mr. Ontiveros was at any of these murders, that he pulled the trigger. This was based upon the testimony of Mr. Trevisco and Mr. Rochin and their evaluation of what was going on. And that, I guess, is interwoven with the other issues that we raised. So what was the outrageous government misconduct that you thought could be admitted during this trial? Oh, no, Your Honor. I don't want to characterize it as outrageous government conduct. But it is. The grounds for dismissing the indictment. Yeah, yeah. That doesn't come in into this trial. What the court is asking, I think, is that I don't want to. You said something when I was asking you about what would the testimony have been. And you said, well, the cooperating witnesses were saying that the drug deal gone bad between Serrano and Ontiveros was the root. However, the real root had to do with the FBI and outrageous government misconduct. I'm trying to press you on that to figure out what specific evidence would have come about that from TUSAC that would be admissible. Mr. Tervisco would have testified that he, back in the late 90s, was cooperating with the FBI. And that there was this warring faction going on. He would have also testified that during his conversations with Agent Lee, one of the supervising agents, that he didn't have, that Mr. Ontiveros was not the subject of any of those conversations. He would have also testified that during that time, the agents and his interaction encouraged this war between the two, between the two factions of the Mexican mafia. And then he would have, and it probably would have been on cross-examination, that he would have testified that he actually was involved in the warring factions. And that he, some with and some without the permission of the federal government, this guy wasn't an innocent, law-abiding person. But I think it just gives insight as to what the true root of where these warring factions were. Right, but the warring factions, as Judge Ponzer said, isn't really, that's not, he's not charged with being part of the warring faction. Are you saying there was some ulterior motive of the FBI to put place, place some of these defendants in places where they would be potentially culpable of some of the murders and attempted murders that went on? I'm not saying that, but this is what the witness may have, this is what the witness was proffering. Okay, but how is that relevant? It's relevant because the government is now putting forth a theory to this jury as to why, how Mr. Ontiveros inserted himself into this organization. And then based upon Mr. Ontiveros' actions, this war occurred. What Mr. Terzak is saying is that outside of Mr. Ontiveros, this action is occurring. And it's occurring not by Mr. Ontiveros, well I don't know if he would specifically say that, but this is my guess where the argument would go, that it's not occurring by Mr. Ontiveros, but it's occurring by the two, by these two factions warring together, but encouraged by the FBI. And it's not in the record, so I, but the, after the first trial, there was a, discussions about whether the believability of Mr. Terzak, Mr. Tervisco, and why Mr. Terzak would have shed light on this. Let me just nudge over to a slightly different area. This is a clear error situation. In other words, you're saying that the district court judge, without having been asked by the defense attorney to do it, should have allowed more questioning, and that the district court judge, saying that he could answer some questions but not others, and having the defense attorney agree on the record that that was a correct interpretation of the law, should nevertheless have known, A, that he shouldn't have said that, and B, sua sponte, should have insisted that there be more questioning of the witness when the defense attorney wasn't asking for it. I think that the, my time is up, that I reserve, but it's almost perfect that that was the, that's the hardest question I need to answer today. That is, that is a tough argument to make. I think it's that laying it out in thinking of fairness in front of this defendant who received the highest sentence out of all the defendants in the case, before a judge that was familiar with the case and had already said that this witness could in fact testify, did not have a Fifth Amendment right to remain silent, that under those circumstances that there is plain error, that there should have been an inquiry further. And there was a difference, and I know that the government noted a difference between, there was also another witness that they had invoked the Fifth Amendment and didn't say anything. But with Mr. Terzak, it's somewhat different because he actually expressed this desire, I can answer some questions but not others. And I think that begins with the role where people familiar with the case have a responsibility to step up and make the inquiry. And he should also, even though the defense attorney didn't ask for it, he should also have insisted that the government give use immunity to Mr. Terzak as well, even though the defense attorney never asked him to do that. But the use immunity is about inquiring further. Right. Inquiring further as to what is this actual evidence that this individual is prepared to testify to. Again, where the court is familiar with the case and the government is familiar with the case, based upon all of the circumstances in the case, where you have witnesses that are testifying on behalf of the government, receiving what the government is arguing is not immunity, but in the sense it's a benefit, and it is in fact immunity with a reduction in the sentence and a paid informant. On one side, this is the government's argument. But then on the other side, when the defense offers a witness, the witness is prepared to answer some questions but not others, that there should be some inquiry, one, by question-by-question basis, and two, by inquiring whether immunity is appropriate. All right. I had the one other issue regarding the expert witness, but I can address that in rebuttal if the court would give me permission to do so. All right. And I can address that quickly, if I can now. Whichever you prefer. I can address it quickly. The arguments are laid out in the brief. In preparing for the case, I noted a recent Ninth Circuit case in the United States VERA, V-E-R-A. And the site doesn't have a Fed Third Site, but it was issued on October 22nd, that supports the position that Mr. Tervisco, a government witness, should not be testifying as an expert and as a lay witness combined without first being qualified as an expert witness. And thank you. May it please the Court. Robert Dugdale on behalf of the United States of America. Your Honors, I will address the three issues posed by defense counsel and skip over the sufficiency of the evidence claim, which we briefed intensely in the brief, laying out all the facts that showed why the brief. It was a very thorough brief. It was very long. So I'm going to point you to the particular pages. I didn't say long. I said thorough. Did you get permission to write that lengthy brief in advance? It was labor of love, Your Honors. In any event, let me talk about the first claim by defense counsel, which was that Judge Carter used an improper procedure when it determined that Mr. Terzak had properly invoked the Fifth Amendment. And I think what we have to do here, look in that lengthy brief and specifically look at the record as it relates to this issue. It's pages 1268 to 1279 in the defendant's sealed excerpts, which is where the colloquy takes place. And I think, to describe it generously, that the defense misreads the record here. Because there's three claims. First of all, that the judge improperly allowed Terzak to claim a blanket assertion of his Fifth Amendment rights. Terzak tried to do so, and the judge told him he couldn't do so, that they had to proceed on this question-by-question basis, which was endorsed in Pierce and is, in fact, what the defense counsel is saying should have happened. It did happen. Second, defense counsel claims in his brief, and he didn't mention this today, that the judge limited the questioning to a few questions. That's not what happened either. Judge Carter allowed defense counsel to ask questions, and so defense counsel himself said, I have no more questions. At the end, when Judge Carter made the decision that the witness had properly invoked the Fifth Amendment and would not be testifying, he asked defense counsel again if he disagreed with that assessment, if he would like to make any further record on this issue. And the only response from defense counsel was that, again, he had no questions. So there was no curtailing of questioning by this witness. So reading this colloquy, some of the questions that were asked, he'd already been convicted of those crimes, yet he took the Fifth. Is that a proper utilization of the Fifth Amendment? I mean, so it may incriminate him, but it's incriminating him of crimes he's already been convicted of committing. Well, that is a difficult question. If a defendant has been convicted and sentenced of a crime and Jeopardy! cannot attach to allow the government to prosecute those crimes again, the Ninth Circuit has recognized that he cannot invoke the Fifth Amendment. But in this particular case, not all those questions went to issues for which he was convicted. Okay, question. Back in the late 90s, did you have a crew of people that you were associated with to commit crimes on behalf of the Mexican Mafia? He takes the Fifth. That's true. He did take the Fifth. As to that, the plea, I don't believe, encompassed, of course, every crime that he committed as a member of the Mexican Mafia in the 1990s. So that's a really broad question. The question wasn't, did you commit these additional crimes that you haven't been convicted for. That, I could understand. It would be a proper invocation of the Fifth Amendment. Well, the question would encompass the answer to that, potentially crimes for which he was convicted of RICO conspiracy. He was convicted of conspiring to murder. Probably under the Pinkerton theory, too, as was Ontiveros, right? Correct. We've seen a lot of these cases. Was Terzak convicted after going to trial, or did he plead guilty? No. He pled guilty. He pled guilty to conspiring to kill Mariona Martinez subsequent to the Easter shooting, which is the subject of this case. He also pled guilty to ordering what turned out to be a murder in state custody as well. So there were other victims that were alleged in this particular case. Correct. A lot. A lot. Let me just, I will just say, as a member of the Mexican Mafia, Mr. Terzak, to analogize him with Mr. Torvizco, who testified, who talked about how at points in his Mexican Mafia member career he had authorized dozens, if not a hundred, murders to take place. Mr. Terzak's criminal activity covered a wide, wide swath of criminal activity that is not encompassed by his guilty plea, which would continually subject him to potential jeopardy, given that the crimes ranged, the crimes as serious as murder. So he was at this level of member? Is that like the top tier level? Correct, Your Honor. Okay. And Antiveros was at this level of associate? He was what Mr. Torvizco, who was a member, he termed Mr. Antiveros his right-hand man. So he was an associate or soldier of the Mexican Mafia. Correct. So Terzak was at the same level as Fernandez Martinez Torvizco, but they were the rival, the so-called rival factions. Correct. Mr. Terzak was in a rival faction with Mr. Martinez. That is correct. So the point, while I agree, Judge Wardlaw, that this is a valid point, that there is this small subset of questions that Mr. Terzak could not invoke the fifth to if they encompassed his guilty plea where he was sentenced. I think it's important to understand here that there's a wide variety of other conduct that could have been covered by the questioning. In addition, as a Mexican Mafia member, his crimes didn't end on the day that he fled. This is a prison gang. He remains in custody up to who knows what. There is continual, he ran the risk of, in short, he ran the risk of putting himself in jeopardy by answering potentially a lot of questions that were posed to him. But isn't this a debate anyway that should have happened before the trial judge? In other words, you put the question to him, he says, I refuse to take, and then the defense attorney stands up and says, Judge, that's a perfect example of an inappropriate invocation of the Fifth Amendment. I should be able to put him on. That is correct. It's a discussion that should have happened before the trial judge, and it never happened. And it never happened because defense counsel never raised the issue, of course. That's why we're looking under plain error. In fact, defense counsel agreed that the proper procedure was used here and the proper conclusion was reached by Judge Carter. And let me just briefly address the point made by defense counsel, I think for the first time today, and that's the supposedly chilling comments made by Judge Carter that Mr. Terzak could properly, that he couldn't answer some questions properly and then refuse to answer others. There's nice circuit authority on this issue. It's in the government's briefs on page 90, I'm sorry, 76 to 77. Denim versus deeds is the case, which talks about how it's not proper for a witness, for instance, to answer questions on direct and then on cross-examination when coerced by the government to refuse to answer questions and to evoke the Fifth because that skews the fact-finding process and the validity of the testimony. So what Judge Carter gave was accurate advice to this witness, or at least it wasn't clearly inaccurate advice, which is how the court should be viewing this under the plain-error standard that this case has its posture in front of this court. The two other points I'd like to note on this, apart from the fact that just defense counsel is factually inaccurate about what happened during this proceeding, but second, there's no authority in this circuit or elsewhere that the government could find that supports any of the claims here. The claim essentially by the defense here is look at cases like Pierce where you can't just have a witness assert a blanket assertion of the Fifth Amendment, his Fifth Amendment rights. Well, that's not what happened here. There was this question-by-question inquiry, which was, in fact, authorized by Pierce. So Pierce doesn't help defense counsel, nor do any of the other cases defense counsel cites. And lastly, I'll note on this point, the defense, and this is important especially under the plain-error review standard that the court is looking at this question under, the defense can't show that he was prejudiced by any of this. I want to make that very clear here. While there's talk about the supposedly exculpatory evidence that Mr. Terzak can offer, there has been not one bit of proof offered by the defense that Mr. Terzak would have testified to any of this, that he would have testified that the FBI, working with him as an informant, helped spur a war. That's not only testimony that there's no proof that would have ever come out of Terzak's mouth, but it's a line of questioning and inquiry that's, in fact, contradicted by the deep dives that the district courts did, both Judge Carter and Judge Matz, in these Mexican Mafia, these related Mexican Mafia cases, and determined that that didn't happen. So the defense wasn't prejudiced in any way by the fact that Mr. Terzak's testimony was suppressed as a result of his decision to take the Fifth Amendment. There's no evidence that he had any exculpatory evidence to give, and to the extent that it's, the defense counsel is trying to explain, has tried to explain it, what he's explaining is irrelevant in any event to the crimes for which Mr. Monteveris has been convicted. Let me just ask you a procedural question. Sure. This way this comes up, at least the way when we look at the record here, it looks like this just all sort of happened when defense counsel announced the defense calls Mr. Terzak. Wasn't this all contemplated ahead of time, given the history of this litigation and all the prior cases? I mean, everybody must have been aware, at least sensitive to the fact that Terzak would take the Fifth if he was called. Yes. Wasn't this dealt with ahead of time? Well, what Judge Carter did, I think, is precisely what defense counsel says he should have done, and was sensitive to the issues and peers. He didn't, Judge Carter just didn't say, everybody knows Mr. Terzak's just going to take the Fifth, so we're not even going to bother having him in a courtroom. Instead, what Judge Carter did is he had Mr. Terzak hauled from the Federal Prison he was in on the other side of the country, brought into court under, with heavy security, given that he's a Mexican Mafia member, at war with, potentially still at war with the other Mexican Mafia member sitting in the hallway who came up next on the witness stand. The first thing he did was put him on the witness stand after he provided him with counsel, his counsel, who was his counsel back in Mr. Terzak's case in 2000 and 2001, who consulted with him. And he made it very clear that he was going to do this question-by-question inquiry. So Judge Carter, given his familiarity with the case, which now spans over 14 years, went beyond what Judge Carter likely was required to have done, given his knowledge of the case and knowledge of the near certainty that Mr. Terzak was going to vote. Even the use immunity issue, it seems like that would have been even ahead of time that, you know, they go to the government and say, hey, give Mr. Terzak use immunity. Yes, and that never happened, as I know. The defense counsel never asked the government to provide immunity for this witness, never asked the court to immunize this witness and provide use immunity for this witness. So that never happened. For all we know, that could have been a tactical decision. I mean, if Mr. Terzak had gotten use immunity, he might have gotten on the stand and just killed the defendant, I mean, as far as we know. It's my view that Mr. Terzak would have been one of the best witnesses the government would have had in this trial. So I was all fine with Mr. Terzak testifying at the end of the day. It was his decision. There's no belief by the government that him not testifying deprived this defendant of any exculpatory evidence. There's certainly no proof to that effect. And it was a decision that Mr. Terzak and Mr. Terzak alone made with the advice of counsel and probably a prudent decision, given the wide breadth of inquiry that Judge Carter was probably going to allow the government and defense counsel to inquire of his criminal activities up to this very day. Does the court have the authority to grant use immunity on its own, or must it come from the government at the government's request? Well, not on its own, but there is a slight exception to that. It's the United States v. Straub case. And that is a case where the Ninth Circuit has determined that in order to balance the scales, the court can provide judicial immunity if a couple of criteria have to be met, none of which have been met in this particular case. What Straub recognizes is that the defense has to show two things for that to happen. First of all, that the testimony of this defense witness is relevant, and for the reasons I've explained, none of it was relevant. None of it was helpful. None of it was exculpatory. So cases that this court has looked at that talk about these things, they don't help the defense either. There's a case called United States v. Gardner, which talks about how a court didn't have to grant immunity because there was no sign that the witness who was going to be immunized would have provided exculpatory information for the defense. So that's the first thing. It has to be relevant, helpful, exculpatory to the defense. And second, one of either two things. Either the prosecution intentionally caused the witness to take the Fifth. Well, that didn't happen. The prosecution didn't do anything to have Mr. Terzak make that decision. It was made upon the advice and with the counsel of his counsel. Or that the prosecution granted immunity to a government witness in order to obtain certain testimony and then the witness who was denied immunity would have directly contradicted that testimony. And even that is not present here because even under what the defense proffers, there's no direct contradiction between what they say Mr. Terzak would have said, which I don't believe he would have said, and what the government witnesses testified to. Nor is it even clear that the cooperating witnesses in this case should be considered immunized witnesses. They pled guilty to, Mr. Torvisco pled guilty to every charge, including murder, in his plea. It wasn't a particularly favorable deal. He got a favorable outcome at the end of the day because he earned it through cooperation. Mr. Roshin, the other cooperating defendant, pled guilty to all the crimes alleged against him plus a murder. So he didn't get a particularly favorable deal. So it's a question, real question here whether they even should be considered immunized witnesses. But beyond all of that, there's just no authority for the notion here that the respondent should have immunized this witness. Never asked by defense counsel, obviously. The proper procedure was never followed. And I think, I realize it's a Third Circuit case, but I think Thomas, the Third Circuit case cited by the government, raises an important point here that the court here is supposed to be the neutral arbitrator of what happens. And there's really a question as far as whether it should take on the role of essentially the advocate by immunizing witnesses when they're not being asked to because it will help one party or the other. Well, he actually made the statement that Mr. Terzak's testimony, it could go either way. It could help either the defense or the government, and it was just unclear. That's true. That's the way it would go. That's true. So he was acting in a neutral way in that sense. I agree with that, Your Honor. That is true, but yet I think the principle still, you know, he would be making decisions that either counsel decide to make. As you point out, Your Honor, this could have been a tactical decision by the defense not to ask particular questions. And what's interesting is all the supposedly exculpatory information that Mr. Terzak was going to be providing, that's not the subject of any of the questions that defense counsel decided to ask in this case. And one can only presume at this point in time that that was a tactical decision. Let me move quickly on to the last issue unless the court has any questions. I have a question. Sure. I read your brief and went through some of the evidence. I'm not 100% clear on what the Overt Act was as to the conspiracy to murder Alex Kizu. Sure. Well, there were a number of... You don't have to detail it now. You could point me to where I could find evidence, you know, supporting evidence of an Overt Act. Sure. Well, there were a number that were alleged in the indictment and proven at trial. As far as Kizu was concerned, there was a phone call, for instance, between Mr. Torvizco and Mr. Ontiveros where Mr. Torvizco informed the defendant of a plan to lure Mr. Kizu and lure Mr. Deteves down to Orange County for a meeting with another person who was on their side of the war, Benny from F Troop, I believe was the gangster's name, for the purposes of killing him. That was after they got out of jail. I'm sorry? That was after they got out of the L.A. County jail. Correct. So after Mr. Kizu got out of jail, there was a plan to lure him to a location in Orange County that was discussed between the defendant and Mr. Torvizco. So that is one. There are other phone calls between Mr. Torvizco and the defendant, for instance, when they talk about how Mr. Kizu was in jail and they were targeting him. So in the Overt Act, is the plan or the phone call? Well, I believe the phone calls are cited, the discussions are cited. The indictment is in, well, the indictment, if you think the brief was long, the indictment was very long. It is in the excerpts of record. I'm certain there were Overt Acts that were proven at trial that are alleged in the indictment. But they relate to these particular phone calls and discussions between Mr. Kizu and, I'm sorry, between the defendant and Mr. Torvizco. I guess the phone call could be an Overt Act if you look at the content of it. Absolutely. If there is a phone call in which they're discussing a plan to set somebody up, that in fact would be the worst use. Hey, we're going to go set this guy up. That is an Overt Act taken in furtherance of conspiracy to murder someone. Lastly, I will deal with the issue of Mr. Torvizco and the claim that he testified as an expert witness. He did not testify as an expert witness in this Court's decision in the Freeman case  Mr. Torvizco, what's interesting about this as well, is Mr. Torvizco has now testified in four of these trials. He's testified in the same manner in all four trials. There was never an objection raised to the manner in which he was testifying about the calls in any of the first three lengthy trials involving dozens of lawyers. And in this last trial, there was no objection, of course, to the manner in which he was testifying. The only open question there is whether he was testifying as an expert witness as to those telephone calls in which he did not participate. Correct. So there are calls that he did participate in, that's not an issue. There were a subset of that, or a subset of all the calls that were played, much smaller calls he did not participate into. And what he didn't testify, we want to be very careful to avoid a hearsay issue. So the only thing he would testify about were events that were referenced in the phone calls of which he had personal knowledge, or certain words or phrases that had meaning to him because of his familiarity with conspiracy and how it worked, and his work in the Mexican mafia. So for instance, there would be a phone call talking about between two other participants where to lay the foundation and make this phone call admissible, he would identify the participants, which is one thing we had to do to make the call admissible. And he would talk, so a witness or another person would talk about this meeting. We would ask Mr. Torvisco, are you familiar if such a meeting occurred? Yes, I was familiar. I was present at the meeting, or I helped plan the meeting and other phone calls, or things of that nature. Or for instance, there would be phone calls, there was a phone call played early on where the two participants in the phone call, not Mr. Torvisco, were talking about going and collecting Mexican mafia taxes, and they listed all the gangs that they would collect from. And Mr. Torvisco was asked, you heard the participant in that phone call talk, for instance, about the Langdon gang or the Laguna gang. What is the Laguna gang? So things of that nature. Things that he had a personal knowledge of. He's not interpreting the words of the phone, the people making the phone call. He's talking about things that were within his personal knowledge. So this squarely falls under Rule 701 as far as admissible testimony. This is a proper lay opinion testimony. It's not expert testimony. The Friedman decision, the site is 498 F3rd, F93, Note 1, specifically talks about this and specifically talks about how lay witnesses can talk about, they can give opinion testimony. They can testify regarding their understanding of coded terms that their co-conspirators use. In this particular case, they're not even particularly coded terms. They're talking about, for instance, the gang that's referenced. And Mr. Torvisco confirms, yes, I know what that is. That is a gang. That is not expert testimony. It's lay opinion testimony both under Friedman and under Vera. And therefore, Mr. Torvisco did not testify as an expert. How he testified was proper. And that's why, I suppose, when experienced retained defense counsel on the other side didn't object, he didn't object because he testified properly. All right. Thank you, counsel. Thank you, Your Honor. We've got a minute left. Just two points. Noticeably, the government did not mention anything about the court's familiarity with this case, in that Mr. Terzak was first. The court first ruled that Mr. Terzak did not have a Fifth Amendment right to testify in a prior trial, and then at this trial said he did. And the questions related to Straub, I think the court inquired whether the defense counsel had inquired or asked for immunity. And in Straub, the court found that it wasn't necessary for the defense counsel to ask for immunity, and it wasn't insignificant in its determination that immunity should have been granted. Thank you, Your Honors. Thank you very much. The case of U.S. v. Ontiveros will be submitted.
judges: Ponsor, Wardlaw, Paez